# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CAISSE, | 1:08-cv-01972-LJO-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES HARTLEY, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation serving a term of fifteen years to life, following his March 9, 1990 conviction for second degree murder. In the instant petition Petitioner does not challenge his underlying conviction; rather, he challenges the Board of Parole Hearings' (hereinafter "Board") February 7, 2007 decision finding him unsuitable for parole. Petitioner contends that the Board's reliance on the immutable circumstances of his commitment offense violates his due process rights; the Board's decision was not supported by some evidence; the Board did not make an individualized assessment and consideration of all factors which support the finding of suitability; the Board's decision was arbitrary and capricious; and the regulations relied on by the Board are unconstitutionally vague as applied in this instance.

1

    Petitioner filed a state petition for writ of habeas corpus in the Contra Costa County Superior Court challenging the Board's decision on the same grounds raised in the instant petition. (Answer, Exhibit A.) On February 28, 2008, the Superior Court denied the petition in a reasoned decision. (Answer, Exhibit B.)

    Petitioner also filed a state petition in the California Court of Appeal challenging the Board's 2007 decision, which was summarily denied. (Answer, Exhibits C, D.)

    Thereafter, Petitioner filed a state petition in the California Supreme Court, which was also summarily denied. (Answer, Exhibits E, F.)

    Petitioner filed the instant federal petition for writ of habeas corpus on December 29, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on April 7, 2009, and Petitioner filed a traverse on May 7, 2009. (Court Docs. 11, 12.)

## STATEMENT OF FACTS[1]

    On November 30, 1988, Petitioner and a friend arrived at the residence of Heather LaRue, who had been evicted from her residence due to her alleged use of drugs and had requested assistance from several of her friends, including Petitioner, in order to help her move. When Petitioner arrived at the LaRue residence, a group of LaRue's friends were gathered outside the residence. During the wait, the members of the group became boisterous. Some of them had been drinking beer and tampered with the fire extinguisher. Petitioner arrived with a duffel bag containing a chef's knife with a ten-inch blade. Petitioner compared his knife to a Buck knife owned by one of the persons in the group and commented that his knife was much larger than the Buck knife and it might be necessary to use it should trouble develop. Petitioner put his duffel bag into his friend's car but retained possession of the knife in the waistband of his pants. At one point in time, one of the residents of the apartment complex came outside and asked the group to leave. The group refused and a fight ensued between one of the residents and one of LaRue's friends. Chad Dixon, a resident of the complex, argued with Petitioner. Petitioner responded by pulling out a knife from his waistband. A struggle erupted between Petitioner and Dixon. Dixon

---

[1] This information is derived from the summary of the factual circumstances recited at the Board's 2007 hearing. (Exhibit A, Transcript at 14.)

2

attempted to hold Petitioner against a wall to prevent him from using the knife; however, he managed to get free and began stabbing Dixon several times who had fallen when he attempted to get away. The stabbing began in the legs and proceeded up to the torso then chest area, and the victim was ultimately stabbed 40 times, 14 of which were serious. Petitioner and his friend fled the scene and called a friend to give them a ride. The two hid the knife in a tree across from a Mervyn's Department Store in Sun Valley, California. The victim was left sprawling on his back with multiple stab wounds throughout his body. When emergency crews arrived, he was unconscious and had no pulse. Upon arrival at the hospital he was pronounced dead at 10:14 p.m.

DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

4

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.   Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he

was provided a written decision explaining the reasons why parole was denied.  See Answer, Exhibit A.

The California Supreme Court clarified the standard of review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (Aug. 21, 2008).  The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  Id. at 1212 (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

At the 2007 hearing, the Board found Petitioner unsuitable for parole based on (1) the fact that the commitment offense was carried out in an especially cruel and callous manner; (2) multiple victims were attacked or threatened; (3) the motive for the crime is inexplicable; (4) an escalating pattern of criminal conduct; (5) unstable social history including tumultuous relationships with other; and (6) failure to demonstrate positive change during his incarceration having suffered nine CDCR-128 counseling chronos and seven CDCR-115 serious disciplinary violations, the last in January 2000, for the violent act of battery.

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification."  In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

7

With regard to the commitment offense, the Board found the offense was carried out in an especially cruel and callous manner in disregard for human suffering and life.[3] The Board noted that the offense was committed while Petitioner was under the influence of alcohol and due to his drunken rage, the victim was mutilated in that he was stabbed approximately 40 times with a ten-inch butcher knife. The victim was left sprawled on the floor with multiple stab wounds, fourteen of which were serious while Petitioner fled the scene. Given the vicious nature of the attack by Petitioner, it is clear that he intended not only to injure Mr. Dixon but to kill him. In addition, the intent is obvious from Petitioner's own statement that it might be necessary to use his butcher knife should trouble develop. The Board also noted that Petitioner expressed no remorse for the offense at the 2007 hearing. Moreover, the motive was inexplicable as Petitioner lost control during a drunken rage and killed the victim.

Although the Board noted that multiple victims were attacked or threatened, the Superior Court questioned such finding, but concluded it was irrelevant given the other independent factors supporting the Board's ultimate finding. (See Exhibit B, Order at p.5.)

The Board noted that Petitioner had an escalating pattern of criminal behavior which included several prior documented incidents involving use of a knife during altercations. 15 Cal. Code Regs. § 2402(c)(2). The first incident involved attempting to stab his stepfather who allegedly abused him. The second involved an incident in which he actually stabbed a girlfriend, fortunately not fatally. The third incident involved chasing down a drug dealer who had apparently sold him bad drugs. (Exhibit A, Transcript at 73.) Petitioner's juvenile record consisted of a six-month probation term for petty theft in 1985 and a conviction for joyriding

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
 (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
 (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
 (C) The victim was abused, defiled or mutilated during or after the offense.
 (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  with a 30 days commitment to a Boys Home in 1987.  He also walked away from the Boys Home
2  that same year and was later returned by his father.  (Exhibit A, Transcript at 73.)  Thus, it is
3  apparent that the Board's finding that Petitioner had an escalating pattern of criminal behavior
4  and failed to benefit from previous attempts to correct his criminality is supported by some
5  evidence.  (Id.)

6  The Board also found that Petitioner had a history of unstable or tumultuous relationships
7  with others, which was properly considered.  15 Cal. Code Regs. § 2402(c)(3).  Petitioner was
8  separated from his biological parents at the age of five.  He had a very volatile relationship with
9  his stepfather who allegedly physically abused him.  Petitioner also felt rejected by his natural
10  father because he did not allow him to live with him.  Petitioner also failed previous grants of
11  probation.  These circumstances, although unfortunate, support the Board's finding that
12  Petitioner had an unstable social history.

13  The Board also considered and found that Petitioner's institutional behavior demonstrated
14  a present danger to public safety if released.  A prisoner's institutional behavior is relevant to the
15  determination of whether he is suitable for parole.  Serious misconduct in prison tends to
16  demonstrate unsuitability.  15 Cal. Code. Regs. § 2402(c)(6).  While it is commendable that
17  Petitioner has remained disciplinary free since 2000, he nonetheless has received several CDCR-
18  115's during his incarceration.  He had three administrative CDCR-115 disciplinary chronos for
19  disrespecting staff in 1991, violation of rights and respect in 1992, and not walking in a single
20  file line in 1995.  Petitioner received four serious CDCR-115[4] disciplinary chronos for
21  manufacturing alcohol in 1990, possession of contraband in 1993, battery on a prisoner in 1993,
22  and battery on a prisoner in 2000.  Petitioner also has received a number of CDCR-128
23  counseling chronos including disobeying orders in 1992, failing to report to work assignment in
24  1993, failing to meet vocational job expectations in 1993, refusing to attend vocational janitorial
25  assignment in 1995, light covered in 1996, disregard for housekeeping policy in 1999, failure to
26  report in 2000, a disciplinary violation in 2001, and failure to report to work in 2005.  (Exhibit A,

---

28  [4] A CDCR-115 documents misconduct which is a violation of law or which is not minor in nature.  15 Cal. Code. Regs. §§ 3312(a)(2), (a)(3)

9

Transcript, at 53-54, 75, 76-77.) In light of Petitioner's negative institutional behavior he has failed to demonstrate positive change. The Board expressed great concern regarding Petitioner recent failure to report to work in 2005[5], stating that although it was considered a relatively minor infraction, it was a "disciplinary area[] that people have to be able to conquer when they go to the free world, because once you start working and get a job, it's not like being in a prison where someone, like the correctional officer, is going to come and get you or tell you what to do. You've got to get up, you got to go to work, and you got to do it yourself, and that is not the type of discipline area we like to see in somebody who is looking and attempting to go out into the free world, because you're actually working for somebody who really doesn't care." (Exhibit A, Transcript, at 75-76.) The Board's finding that Petitioner continues to pose an unreasonable risk of danger was reasonable and supported by the evidence.

The Board was also troubled by Petitioner's history of substance abuse. Petitioner admitted that he was under the influence of alcohol at the time of the commitment offense and had been drinking all day. His alcohol use began at the age of fifteen and continued to the age of 18-the time of commitment offense. He also experimented with other substances including, marijuana, methamphetamine, and LSD. There is no doubt that alcohol was a contributing factor in the commission of the instant offense, as Petitioner's memory of the factual circumstances surrounding the offense is limited because of his heavy use of alcohol that day. (See Exhibit A, Transcript at 17, 24.) While Petitioner's participation in Alcoholics Anonymous and Narcotic Anonymous ("AA/NA") is certainly commendable, given the significant role that alcohol played in the commission of the offense, there is some evidence to support the Board's finding that

---

[5] The Board read this incident report for the record stating:

"On Sunday, September 4th, 2005, at approximately 5:30 a.m., while performing my duties at Facility 4 Kitchen Officer I noticed that inmate Caisse failed to report to work. I phoned Housing Unit 450 to speak to Caisse to find out why he didn't show up for work. Caisse stated, quote, 'I'm tired from working yesterday and from my visit. That's why I didn't get up to go to work.' I gave him a direct order to report to work and Caisse said, 'All right.' But he never showed up. Caisse failed to report to work and is aware that any further violations will result in the issuance of a 115. Caisse is aware of this report."

(Exhibit A, Transcript, at 54.)

1  further participation is necessary as Petitioner's gains are recent and he must demonstrate an
2  ability to maintain them over an extended period of time.  The Board recommended that
3  Petitioner read substance abuse literature and develop a "self-abuse release plan."  (Id. at 81-82.)
4         The Board also found that Petitioner did not have sufficient parole plans upon release.
5  While Petitioner had submitted proof of residency upon release, he did not have proof of solid
6  employment or specific financial support.  Petitioner indicated that he put a resume together that
7  was sent out, but he did not receive any responses.  (Id. at 33.)  Although it appeared Petitioner
8  had solid plans of residency upon release, he had not made any progress in terms of seeking
9  employment and some evidence support this finding.  (Id. at 33-44.)
10        With regard to the financial support, the Board pointed out that all of the letters of
11 support indicated "some kind of financial support that they would provide to you, but nobody
12 defines what that means."  (Id. at 34.)  This was certainly a legitimate concern to the Board
13 because it must be assured that Petitioner will not be forced back into criminality to earn a living.
14 (Id. at 35.)  The Board recommended that future letters of support specifically define what kind
15 of support is being offered. (Id. at 38-39.)
16        Pursuant to section 2402(d), the Board also considered the positive factors and
17 commended Petitioner for programming reasonably well, developing the marketable skill of
18 vocational Graphics, obtaining his GED, participation in self-help programs including available
19 AA programs, Breaking Barriers, Anger Management, Mechanical Drawing, and favorable
20 psychological report. (Id. at 74-75, 79, 84-85.)  However, on balance the positive aspects did not
21 outweigh the factors of unsuitability. (Id. at 87.)
22        Petitioner contends that the Board's decision was arbitrary and capricious because the
23 Board was biased.  The superior court found that the Board "considered all relevant evidence and
24 factors in reaching its final determination."  (Exhibit B, Order, at 8.)  The court concluded that
25 there "was some evidence to support the [Board's] findings and it did not act arbitrarily."  (Id. at
26 9.)
27        Bias claims must overcome a presumption of honesty and integrity on the part of the
28 decision-maker.  Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).  This presumption applies to

state administrative decisions. Id. In order to prevail on a bias claim, it must be shown that the adjudicator has prejudiced, or reasonably appears to have prejudiced, an issue. Id. The denial of a constitutional right to a fair hearing before an impartial tribunal may be established in two different ways. Id. In some instances, the proceedings and surrounding circumstances may reveal an actual bias on the part of the adjudicator. Id. In other instances, the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an appearance of partiality that violates due process, even without a showing of actual bias. Id. Absent other circumstances, repeated unfavorable rulings are insufficient to establish a due process violation, even if the number of rulings is extraordinarily high. Id. at 741-742.

Here, the record does not support the finding that the Board acted arbitrarily or capriciously when rendering its determination. Rather, the guidelines provided by the regulation and case law set forth a well-defined criteria for determining suitability for parole that is not unconstitutional or arbitrary, and such criteria was properly applied to the determination that Petitioner is not yet suitable for parole. Thus, there being no evidence of bias, the state courts' decision denying Petitioner claim to the contrary were "not an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

There is likewise no merit to Petitioner's claim that the Board applied the regulations in an unconstitutionally arbitrary, vague, and overbroad manner. Initially, Petitioner's claim is based entirely upon a state superior court order issued August 30, 2007, in In re Criscione, where the superior court found the Board had arbitrarily applied the regulations to all prisoners. However, this holding was reversed by the California Court of Appeal, finding the superior court erred in its decision. See In re Donald Ray Lewis, __ Cal.Rptr.3d __ (Mar. 13, 2009), 2009 WL 638853. In addition, this Court is not bound by decisions of the state superior court, and the United States Supreme Court has rejected the application of offensive non-mutual collateral estoppel against the government. United States v. Mendoza, 464 U.S. 154, 160 (1984); Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708, 714 (9th Cir. 2005) (applying Mendoza to non-mutual defensive collateral estoppel against a state agency.) Because Petitioner's claim is without factual or legal support, it must be denied.

In conclusion, the factors of the commitment offense and trivial motive, coupled with Petitioner's misconduct during incarceration, unstable social history, limited participation in substance abuse programming, and insufficient parole plans, provide "some evidence" that Petitioner continues to be a risk to public safety if released.  See In re Lawrence, 44 Cal.4th at 1212, 1221, ("the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense."  "It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.")

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 4, 2009                         /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE